UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHARANJIT SINGH, ) | CASE NO. C06-0700-JLR |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | REPORT AND RECOMMENDATION: |
| ) | INDEFINITE DETENTION |
| ALBERTO GONZALES, et al., ) | |
| ) | |
| Respondents. ) | |
| _____ ) | |

## I. INTRODUCTION AND SUMMARY CONCLUSION

Petitioner is a native and citizen of India who is being detained by U.S. Immigration and Customs Enforcement ("ICE") pursuant to a final order of removal that became final on May 29, 2003. On May 17, 2006, petitioner filed a Petition for Writ of Habeas Corpus pursuant to 8 U.S.C. § 2241, challenging the constitutional and statutory authority of ICE to detain him any further due to the unlikelihood of his removal from the United States in the reasonably foreseeable future. (Dkt. #3). Petitioner requests that he be released from custody pending his removal from the United States. Respondents argue that petitioner's continued detention is authorized by Section 241(1)(C) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(a)(1)(C),

REPORT AND RECOMMENDATION:
INDEFINITE DETENTION
PAGE -1

because petitioner's removal has been suspended and extended due to his "failure and refusal to make timely application in good faith for travel or other documents necessary to his removal." (Dkt. #11 at 2).

Having carefully reviewed the entire record, I recommend that petitioner's habeas petition (Dkt. #3) be GRANTED and respondents' motion to dismiss (Dkt. #11) be DENIED.

## II. BACKGROUND AND PROCEDURAL HISTORY

Petitioner Charanjit Singh is a native and citizen of India. (Dkt. #15 at L73, L58). On April 30, 1991, he entered the United States at San Francisco International Airport and sought asylum. (Dkt. #15 at R125). An Immigration Judge ("IJ") granted petitioner asylum on June 24, 1992, and petitioner adjusted his status to that of Lawful Permanent Resident ("LPR") on November 5, 1993. (Dkt. #15 at L76-80).

Petitioner left the United States for Canada in 1997, where he applied for but was denied refugee status, and resided there until 2002. (Dkt. #15 at L308). On December 13, 2002, petitioner was detained by the former Immigration and Naturalization Service [1] ("INS") while attempting to re-enter the United States at Sumas, Washington without a valid entry card. The INS determined that petitioner had effectively abandoned his LPR status when he left the United States for Canada and resided there for over five years.

The INS issued a Notice to Appear, placing petitioner in removal proceedings and charging

---

[1] Effective March 1, 2003, the Immigration and Naturalization Service ("INS") was abolished pursuant to the Homeland Security Act of 2002, 116 Stat. 2135, Pub. L. 107-296, *codified at* 6 U.S.C. §§ 101, *et seq.*, and its immigration removal functions were transferred to the United States Immigration and Customs Enforcement ("ICE"), which is part of the Department of Homeland Security ("DHS").

01 petitioner with being subject to removal pursuant to INA § 212(a)(6)(C)(i) (relating to
02 misrepresentation), and INA § 212(a)(7)(A)(i)(I) (relating to documentation requirements). (Dkt.
03 #15 at L103). On February 3, 2003, an IJ found petitioner removable, ineligible for relief from
04 removal, and ordered him removed to India. (Dkt. 315 at L242). Petitioner appealed the IJ's
05 decision on February 24, 2003. On May 29, 2003, the Board of Immigration Appeals ("BIA")
06 denied petitioner's appeal. (Dkt. #15 at L259-60). On June 30, 2003, petitioner timely filed an
07 appeal with the Ninth Circuit Court of Appeals. (Dkt. #19, Ex. C). On March 11, 2004, the BIA
08 reissued its decision sua sponte because the BIA's order dated May 29, 2003, had been returned
09 as undeliverable by the United States Postal Service. (Dkt. #15 at R228-30). On August 2, 2004,
10 petitioner filed a letter with the Ninth Circuit requesting a stay of removal. (Dkt. #19). On
11 August 16, 2004, the Ninth Circuit denied petitioner's appeal, mooting his request for a stay of
12 removal. (Dkt. #15 at L324-26).

A. <u>Removal Efforts</u>

Petitioner has been in ICE custody since December 13, 2002. (Dkt. #15 at L102-03). On August 6, 2003 and March 11, 2004, ICE issued a Form I-229(a) "Warning for Failure to Depart," advising petitioner of the consequences for failing to assist in obtaining travel documents necessary for his removal. (Dkt. #15 at R136, R140).

On January 21, 2005, petitioner was served with another Warning for Failure to Depart and a "Notice of Failure to Comply Pursuant to 8 CFR 241.4(g)," stating that he had failed to comply with his obligation to assist in obtaining travel documents, and that his removal period would be extended. (Dkt. #R149, R147).

On March 29, 2005, petitioner was served with another Warning for Failure to Depart.

REPORT AND RECOMMENDATION:
INDEFINITE DETENTION
PAGE -3

01  (Dkt. #15 at R150). On March 30, 2005, ICE drafted a request for travel documents, but
02  petitioner refused to cooperate. (Dkt. #15 at R162-69, R176). On October 13, 2005, ICE issued
03  a second Notice of Failure to Comply, advising petitioner that he had failed to comply with his
04  obligation to assist in obtaining travel documents, and that his removal period would be extended.
05  (Dkt. #R181).

06  On November 13, 2005, petitioner stated on a Detainee Request Form that he wanted to
07  go home to India and wished to cooperate in obtaining travel documents. (Dkt. #15 at R183-86).
08  Petitioner's deportation officer responded that he would get the travel documents to him and that
09  his new 90-day removal period would begin on November 15, 2005. (Dkt. #15 at R255).

10  On January 17, 2006, petitioner's counsel contacted his deportation officer and asked if
11  there were any concerns regarding petitioner's cooperation, but ICE officers did not respond to
12  the inquiry. (Dkt. #19, Ex. A). On February 28, 2006, ICE issued another Warning for Failure
13  to Depart. (Dkt. #15 at R216). That same day, petitioner filled out a personal questionnaire (Dkt.
14  #15 at R244), and was provided an Indian passport application to complete. (Dkt. #15 at R217-
15  226). Petitioner's deportation officer noted that petitioner was in compliance with his obligations
16  to assist in his removal. (Dkt. #15 at R256). On March 1, 2006, petitioner completed a request
17  for an Indian passport, and ICE forwarded the request, along with other documents, to the Indian
18  Consulate in San Francisco, California. (Dkt. #15 at R242, R245, R256). On March 21, 2006,
19  another request for travel documents was sent to the Indian Embassy. *Id.* On May 8, 2006,
20  petitioner's deportation officer contacted ICE headquarters and was informed that it "could be
21  another 90 days before they get any information." *Id.*
22  / / /

REPORT AND RECOMMENDATION:
INDEFINITE DETENTION
PAGE -4

B. <u>File Custody Review</u>

On August 19, 2004, ICE conducted a Post Order Custody Review. (Dkt. #15 at R127-133). The review stated that petitioner has refused to cooperate in obtaining travel documents, and recommended that petitioner remain in ICE custody until he cooperates with obtaining travel documents. (Dkt. #15 at R129). On September 29, 2005, ICE conducted a second Post Order Custody Review. (Dkt. #15 at R173-79). The review stated that petitioner "remains steadfast in his refusal to cooperate," and recommended that petitioner remain in ICE custody until either a travel document is issued or petitioner elects to cooperate, which would then begin the final removal period. (Dkt. #15 at R173). On November 17, 2005, ICE issued a Notice to Alien of File Custody Review, indicating that ICE would conduct another file review on February 15, 2006. (Dkt. #15 at R188). The administrative record contains no further custody reviews.

## III. DISCUSSION

The post-removal-detention statute, INA § 241(a), 8 U.S.C. § 1231(a), provides for the mandatory detention of aliens awaiting removal from the United States for an initial period of three months. This three months may be followed by an additional three months discretionary detention during which detention remains presumptively valid. *Zadvydas v. Davis*, 533 U.S. 678, 121 S. Ct. 2491, 2505, 150 L. Ed. 2d 653 (2001).

In *Zadvydas*, the Supreme Court explained that after this six-month period, the alien is eligible for conditional release upon demonstrating that there is "no significant likelihood of removal in the reasonably foreseeable future." *Id.* Nonetheless, the six month presumption "does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of

REPORT AND RECOMMENDATION:
INDEFINITE DETENTION
PAGE -5

removal in the reasonably foreseeable future." *Id.* The petitioner has the burden of coming forward with "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Then the burden shifts to respondents to produce evidence which could rebut petitioner's showing. *Id.*

In this case, petitioner has been in ICE custody following a final order of removal since May 29, 2003.[2] Thus, the 90-day removal period expired on or about August 29, 2003, and the six-month presumptively reasonable removal period expired on or about November 29, 2003. Respondents contend that petitioner's continued detention is authorized by 8 U.S.C. § 1231(a)(1)(C) because petitioner's removal has been suspended and extended due to his "failure and refusal to make timely application in good faith for travel or other documents necessary to his removal." (Dkt. #11 at 2). Respondents assert that petitioner did not begin cooperating with ICE officials until February 28, 2006, when he completed and signed his passport application. (Dkt. #11 at 6, Dkt. #23). Respondents further contend that ICE has been successful in repatriating Indian citizens, and that petitioner's removal is likely in the reasonably foreseeable future. (Dkt. #23 at 2).

Petitioner argues that extension of the removal period is *not* authorized by 8 U.S.C. §

---

[2] An order of removal becomes administratively final upon a determination by the BIA affirming such order. INA § 101(47), 8 U.S.C. § 1101(47); 8 C.F.R. § 241.1(d). Although the BIA reissued its decision on March 11, 2004, petitioner had already filed a petition for review of the BIA's original decision with the Ninth Circuit within the 30-day deadline required by 8 U.S.C. § 1252(b)(1), vesting jurisdiction in the Ninth Circuit over the BIA's May 29, 2003, decision. *See Roy v. Ashcroft*, 389 F.3d 132, 136 (5th Cir. 2004). The Ninth Circuit dismissed petitioner's petition for review without ordering a stay of petitioner's removal. Accordingly, petitioner's order of removal became administratively final and the 90-day removal period began on May 29, 2003. *See* INA § 241(a)(1)(B), 8 U.S.C. § 1231(a)(1)(B).

REPORT AND RECOMMENDATION:
INDEFINITE DETENTION
PAGE -6

01  1231(a)(1)(C) and that his extended detention pursuant to this provision violates his due process

02  rights. (Dkt. # 18 at 7). Petitioner asserts that ICE failed to comply with its own regulations

03  when it purported to extend petitioner's detention pursuant to 8 U.S.C. § 1231(a)(1)(C) without

04  serving petitioner with a "Notice of Failure to Comply" before the expiration of the 90-day

05  removal period. *See* 8 C.F.R. § 241.4(g)(1)(ii). Petitioner further argues that his detention is

06  unlawful because there is no reasonable likelihood that he will be removed in the foreseeable

07  future. (Dkt. #18 at 11-14).

08         Pursuant to INA § 241(a)(1)(C), "the removal period shall be extended . . . and the alien

09  may remain in detention during such extended period if the alien fails or refuses to make timely

10  application in good faith for travel or other documents necessary to the alien's departure or

11  conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. §

12  1231(a)(1)(C). The Ninth Circuit has interpreted Section 241(a)(1)(C) as authorizing continued

13  detention of a removable alien "so long as the alien fails to cooperate fully and honestly with

14  officials to obtain travel documents." *Lema v. I.N.S.*, 341 F.3d 853, 857 (9th Cir. 2003)(emphasis

15  added); *see also Pelich v. I.N.S.*, 329 F.3d 1057, 1060 (9th Cir. 2003)(holding that *Zadvydas* does

16  not apply where an alien holds the "'keys [to his freedom] in his pocket' and could likely effectuate

17  his removal by providing the information requested by the INS."). Section 241(a)(1)(C) is

18  implemented by regulation found at 8 C.F.R. § 241.4(g), which provides that the removal period

19  "shall be extended until the alien demonstrates to the Service that he or she has complied with the

20  statutory obligations. Once the alien has complied with his or her obligations under the law, the

21  Service shall have a reasonable period of time in order to effectuate the alien's removal." 8 C.F.R.

22  § 241.4(g)(1)(ii)(emphasis added). The regulation further provides that ICE shall serve the alien

REPORT AND RECOMMENDATION:
INDEFINITE DETENTION
PAGE -7

01  with a Notice of Failure to Comply <u>before the expiration of the removal period</u>, which will advise

02  the alien of the following:

03    (1) the provisions of INA § 241(a)(1)(C) (extension of removal period) and 243(a) (criminal penalties related to removal);

04

05    (2) the circumstances demonstrating his or her failure to comply with the requirements of INA § 241(a)(1)(C); and

06    (3) an explanation of the steps that the alien must take in order to comply with the statutory requirements.

07

08  8 C.F.R. § 241.4(g)(5)(ii).

09    Here, ICE failed to comply with its own regulations when it purported to extend

10  petitioner's detention pursuant to INA § 241(a)(1)(C) without issuing a Notice of Failure to

11  Comply within the 90-day removal period, indicating that petitioner is not in compliance and what

12  steps he must take to be in compliance. Rather, respondents did not issue a Notice of Failure to

13  Comply until January 21, 2005 – seventeen months after the 90-day removal period expired.

14  Although respondents issued a Warning for Failure to Depart in August 2003, the warning is

15  merely a form given to every detainee and provides no indication that petitioner has failed to

16  cooperate or that the removal period has been extended. (Dkt. #15 at R136). According to the

17  Code of Federal Regulations, Notice of Failure to Comply and extension of the removal period

18  must be provided before the removal period expires. 8 C.F.R. § 241.4(g)(1)(ii)(requiring that ICE

19  provide notice of failure to comply "before the expiration of the removal period"); see also 8

20  C.F.R. § 241.4(g)(1)(iii)(providing that ICE shall advise the alien that the notice of failure to

21  comply shall extend the removal period, "if the removal period has not yet expired.").

22  Consequently, ICE cannot rely on Section 241(a)(1)(C) to extend the removal period that expired

REPORT AND RECOMMENDATION:
INDEFINITE DETENTION
PAGE -8

01 seventeen months earlier.  Furthermore, although petitioner initially refused to cooperate, the

02 administrative record indicates that petitioner began cooperating in November 2005.  Accordingly,

03 ICE's claim that petitioner has failed to cooperate is now moot.  *See Lema*, 341 F.3d at 857; *see*

04 *also* 8 C.F.R. § 241.4(g)(1)(ii).

05       Alternatively, respondents contend that petitioner's continued detention is lawful because

06 petitioner's repatriation to India will occur in the reasonably foreseeable future.  (Dkt. #23 at 2).

07 Respondents assert that ICE has been successful in repatriating Indian citizens and that ICE has

08 done all it can to obtain travel documents from India.  *Id.*  Petitioner challenges respondents' claim

09 that he will be removed in the reasonably foreseeable future, contending that two travel document

10 requests have been sent to the Indian Embassy, and the only feedback ICE has received regarding

11 the travel documents is a May 8, 2006, statement that it "[c]ould be another 90 days before [ICE]

12 get[s] any information."  (Dkt. #15 at R256).

13       The Court finds that petitioner has met the *Zadvydas* standard of showing that there is no

14 significant likelihood he will be removed in the reasonably foreseeable future.  Petitioner has fully

15 cooperated with ICE's efforts to obtain a travel document for him since November 2005.  ICE,

16 however, has provided no substantive indication regarding how or when it expects to obtain the

17 necessary travel document from the Indian government.  Rather, ICE merely asserts that it has

18 followed up on its request for travel documents from India and done all it can.  (Dkt. #23 at 2).

19 This is not sufficient evidence to rebut petitioner's showing that he is unlikely to be removed in

20 the reasonably foreseeable future.

21       Accordingly, the Court finds that petitioner has shown that there is no significant likelihood

22 of his removal to India in the reasonably foreseeable future.  The six-month period established by

REPORT AND RECOMMENDATION:
INDEFINITE DETENTION
PAGE -9

the Supreme Court in *Zadvydas* expired on November 29, 2003, and petitioner should be released.

## IV. CONCLUSION

For the foregoing reasons, I recommend that the Court GRANT petitioner's habeas petition and order petitioner's release on conditions. Such conditions may include those set forth in 8 C.F.R. § 241.5(a). A proposed Order accompanies this Report and Recommendation.

The Clerk is directed to also send a copy of this Order to the Honorable James L. Robart.

DATED this 17th day of August, 2006.

Mary Alice Theiler
United States Magistrate Judge